UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

CLARK FRAZIER,                    )
                                  )
            Plaintiff,            )
                                  )
v.                                )          No. 2:19-CV-00102-JRG-CRW
                                  )
T. DOLLAR et al.,                 )
                                  )
            Defendants.           )

## MEMORANDUM OPINION AND ORDER

Defendant T. Dollar and Defendant Christopher Morley have filed motions for summary judgment in this pro se prisoner's civil rights action for violation of 42 U.S.C. § 1983 [Docs. 119, 124, and 129].[1]  Plaintiff has filed a response opposing the motions [Doc. 136].  Upon consideration of the parties' pleadings, the summary judgment evidence, and the applicable law, the Court finds that summary judgment should be **GRANTED**, as set forth below.

## I.    PLAINTIFF'S RELEVANT ALLEGATIONS[2]

On December 10, 2018, Plaintiff was an inmate at the Northeast Correctional Complex ("NECX") [Doc. 2 at 3].  On that date, Plaintiff alleges that correctional officers Dollar, Murwin, Richardson[3], and Morley[4] ("Defendants") entered his cell and repeatedly kicked him, struck him, gouged his eyes, and "fish-hooked" him by putting their fingers in his mouth and nose and pulling

---

[1] Defendant T. Dollar filed a motion to dismiss [Doc. 119] that the Court converted to a motion for summary judgment [Doc. 127].  Thereafter, Defendant Dollar filed an additional motion for summary judgment on an additional ground [Doc. 124].

[2] The Court notes that Plaintiff's compliant is not notarized, nor is it signed under penalty of perjury [Doc. 2].  The allegations in his later filings, however, comport with 28 U.S.C. § 1746 [*See, e.g.*, Docs. 90, 94, 95, and 135].  Accordingly, the Court recites the allegations of the complaint merely to provide context.

[3] The Court has made numerous attempts to locate Defendant Richardson but has been unable to effect service on him [*See, e.g.*, Docs. 11, 17, 17, 22, 25, 42, and 55].

[4] Plaintiff initially misidentified Defendant Morley as "C. Ingle" but was granted permission to amend his complaint to substitute Morley as a Defendant [*See* Docs. 69 and 76].

backwards [*Id.* at 3-4]. Plaintiff contends that he was nonresistant the entire time [*Id.* at 4]. Plaintiff maintains that he was then placed in an outside holding cell wearing only his underwear in freezing weather without having received medical care [*Id.* at 5].

Plaintiff maintains that he filed grievances, complaints, and request forms concerning the December 10, 2018 incident, but that "they came up missing" [*Id.* at 6]. After the Court screened Plaintiff's allegations in compliance with the Prison Litigation Reform Act ("PLRA"), Plaintiff was allowed to proceed on a claim of excessive force against Defendants in their individual capacities [Doc. 7 at 6].

## II.    SUMMARY JUDGMENT STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd*, 224 F.3d 797, 800 (6th Cir. 2000). Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611 (6th Cir. 2009) (quotation marks omitted).

The moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). In order to successfully oppose a motion for summary judgment, a party "'must set forth specific facts showing that there is a genuine issue for trial'" and "'may not rest upon the mere allegations or denials of his pleading.'" *Anderson v. Liberty Lobby, Inc.*, 47 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).

2

A district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded, however. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). Rather, the court is required to, at a minimum, examine the motion to ensure that the movant has met its initial burden. *Id.* In doing so, the court "must not overlook the possibility of evidentiary misstatements presented by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 407 (6th Cir. 1992). The court must "intelligently and carefully review the legitimacy of [] an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party." *Id.* In the absence of a response, however, the Court will not "*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party." *Id.* at 410. If the court determines that the unrebutted evidence set forth by the moving party supports a conclusion that there is no genuine issue of material fact, the court will determine that the moving party has carried its burden, and "judgment shall be rendered forthwith." *Id.* (alteration omitted).

## III.    UNREBUTTED SUMMARY JUDGMENT EVIDENCE[5]

At all relevant times, Defendants were members of the Correctional Emergency Response Team ("CERT") at NECX [*See, e.g.,* Doc. 124-1; Doc. 124-2; Doc. 124-3]. At approximately 8:00 a.m. on December 10, 2018, CERT responded to a radio call regarding an assault on another officer in the prison yard [Doc. 124-1 at ¶5]. The incident requiring CERT's intervention occurred when Plaintiff, who was asked to submit to handcuffs for the purpose of transport, pulled away from the officers and struck one of them with a closed fist [Doc. 124-5 at 2, 5]. Upon Defendants' arrival, they observed Plaintiff face down and handcuffed [Doc. 124-1 ¶5; Doc. 124-3]. Defendants observed cuts, abrasions, and bruising to Plaintiff's face, so he was taken to prison medical staff

---

[5] The majority of the submitted documents are neither authenticated nor sworn. However, neither Defendant nor Plaintiff object to the admissibility of the evidence presented.

3

to be evaluated [Doc. 124-1 ¶5; Doc. 124-2; Doc. 124-3]. Once medical staff cleared Plaintiff, he was moved to a cell in Unit 5 without incident [Doc. 124-1 ¶6; Doc. 124-2; Doc. 124-3].

Plaintiff was strip-searched per policy of the Tennessee Department of Correction ("TDOC") [Doc. 124-1 ¶6]. His clothes were left in the cell with him [*Id.*]. A short time later, CERT was advised that Plaintiff had broken a sink and sprinkler head in his cell, thereby causing it to flood [Doc. 124-1 ¶7; Doc. 124-2; Doc. 124-3]. CERT was again directed to remove Plaintiff from this cell to another cell in Unit 4 [Doc. 124-1 ¶7; Doc. 124-2; Doc. 124-3]. At the time, Plaintiff was wearing only his boxers [Doc. 124-2]. The move to the second cell was accomplished without incident [Doc. 124-1 ¶7; Doc. 124-2; Doc. 124-3].

At approximately 10:45 a.m., the fire alarm sounded, and CERT was informed that Plaintiff had broken another sprinkler [Doc. 124-1 ¶8; Doc. 124-2; Doc. 124-3; Doc. 124-7]. Warden Roark directed CERT to remove plaintiff from the cell [Doc. 124-1 ¶8; Doc. 124-2; Doc. 124-3].

Upon arriving at Plaintiff's cell, Defendant Dollar twice ordered Plaintiff to back up to the "pie flap" to be handcuffed, and Plaintiff twice refused to comply [Doc. 124-1 ¶9; *see also* Doc. 124-2; Doc. 124-3]. Defendant Dollar directed officers to enter the cell and handcuff Plaintiff [*See* Doc. 124-1 ¶10]. Plaintiff resisted CERT in handcuffing him, and he attempted to bite Defendant Murwin's hand at one point [Doc. 124-1; Doc. 124-2; Doc. 124-3].

The officers finally handcuffed Plaintiff, and he was removed from the cell by CERT and placed in an outdoor "rec cage" per the orders of Warden Roark [Doc. 124-1 ¶¶9-10; Doc. 124-2; Doc. 124-3]. Plaintiff did not complain of injuries at that time, and Defendants' involvement with him ceased at that point [Doc. 124-1 ¶¶10-11; Doc. 124-3]. Plaintiff was evaluated by medical staff in the rec cage at approximately 11:45 a.m., where he made the statement "my bad" when asked how the incident involving the use of force occurred [Doc. 124-6].

After the commissioner's office received a complaint, TDOC investigated the events involving Plaintiff and Defendants on December 10, 2018 [*See, e.g.*, Doc. 101-1 at 13-14; Doc. 135 at 9-14]. TDOC's investigation "revealed [Plaintiff] sustained multiple injuries at various times in various locations at the facility. Furthermore, the inmate was placed in a recreation enclosure in sub-freezing weather (light snow and snow on ground) wearing only wet boxer shorts for approximately two (2) hours, denied adequate protection from extreme weather elements[,] and denied adequate medical attention" [Doc. 101-1 at 13; Doc. 135 at 9-14]. As a result, Defendants' employment was terminated in March 2019, and each was deemed ineligible for rehire with TDOC [Doc. 101-1 at 13; Doc. 135 at 9-14].

There is no record of any grievances filed by Plaintiff in relation to the incident of December 10, 2018 [Doc. 119-1].

## IV.    LAW & ANALYSIS

Defendant Dollar maintains that he is entitled to summary judgment (1) due to Plaintiff's failure to exhaust his available administrative remedies prior to filing suit [Doc. 119], and (2) on the basis of qualified immunity [Doc. 124]. Defendant Morley moves for summary judgment on the basis of qualified immunity, as well [Doc. 134]. Plaintiff, who does not contest the allegations in the documents submitted by Defendants in support of summary judgment, nonetheless maintains that summary judgment is inappropriate due to TDOC's investigation into the incident and its subsequent findings [Doc. 136].

### A.    PLRA Exhaustion

The Court first considers Defendant Dollar's contention that Plaintiff failed to exhaust his available administrative remedies prior to filing this suit [Doc. 119]. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Therefore, the PLRA requires prisoners to exhaust all available administrative remedies as a precondition to filing suit under 42 U.S.C. § 1983. *See* 42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding "that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). Moreover, the exhaustion requirement is one of "proper exhaustion," which requires a plaintiff to complete "the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).

The Court notes that in some limited circumstances an inmate is relieved of his duty to exhaust administrative remedies because the remedies are effectively unavailable. *See Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016). These circumstances include (1) when there is no possibility for relief through use of the procedure; (2) when the rules are so confusing as to render them essentially unknowable; and (3) when prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*.

TDOC Administrative Policy 501.01 governs inmate grievances [*See* Doc. 119-2]. The policy requires that grievances must be filed within seven calendar days of the occurrence, and it provides for three levels of review by TDOC should an inmate be dissatisfied with the response [*Id*.]. *See* Tennessee Dep't of Corr., "*Administrative Policies and Procedures*," at https://www.tn.gov/content/dam/tn/correction/documents/501-01.pdf (last visited March 25, 2021). Here, Plaintiff alleges that he attempted to file a grievance that was lost or thrown away [*See* Doc. 2 at 6]. In response to Defendant Dollar's motion for summary judgment on the basis

of want of exhaustion, Plaintiff argues that the very fact of an investigation into this incident upon a complaint is sufficient to satisfy any exhaustion requirement, given that Defendants refused to make a record of exhaustion in this case by disposing of his grievance [*See* Doc. 135 at 1-2].

The Court finds TDOC's decision to terminate Defendants' employment upon investigation of a complaint into the incident giving rise to this suit is insufficient to demonstrate Plaintiff's compliance with TDOC's administrative procedures regarding exhaustion. The question of whether Defendants impeded Plaintiff's efforts to exhaust, however, warrants more thorough discussion. To be certain, prison officials cannot create a defect in the administrative exhaustion process and then attempt to take unfair advantage of the exhaustion requirement. *See, e.g., See Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (noting failure to exhaust administrative remedies would be excused upon determination that officials denied prisoner plaintiff a grievance form); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (holding remedy becomes "unavailable" if "a prisoner, through no fault of his own, was prevented from availing himself of it"); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (finding remedy that officials keep prisoner from using is not "available"); *Aquilar–Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) (holding court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials").

In this instance, however, Plaintiff does not state when he made the grievance regarding Defendants' conduct, to whom he made the grievance, or the details of the grievance. Moreover, he does not maintain that he attempted to re-file the grievance or seek any levels of appeal. As noted above, a prisoner must use all available procedures in accordance with the applicable rules before he may be deemed to have exhausted; he cannot exhaust his remedies merely by failing to follow the necessary steps so that remedies once available to him no longer are. *See Woodford*,

548 U.S. at 89. Therefore, even if Plaintiff's initial grievance was misplaced or thrown away, he did not attempt to refile or otherwise appeal the process through its conclusion so as to properly comply with the PLRA's mandatory exhaustion requirement.

Additionally, Plaintiff cannot successfully contend that the process was confusing or too difficult to follow, as he utilized the process on July 25, 2018, according to TDOC records [*See* 119-1]. Rather, Plaintiff has merely presented the Court with an unsubstantiated and conclusory allegation that he filed any grievance at all, and such an allegation is insufficient to create a genuine dispute of material fact in light of Plaintiff's failure to pursue the issue. *See, e.g., Pickens v. Lewis*, No. 1:15-CV-275-FDW, 2017 WL 3277121, at *4 (W.D.N.C. Aug. 1, 2017) ("[U]nsubstantiated and conclusory assertions by prisoner-plaintiffs that prison grievances were hindered, without providing any details regarding the date the alleged grievances were submitted or to whom they were submitted, fail to create a genuine issue of material fact sufficient to withstand summary judgment."). Accordingly, the Court finds that Plaintiff failed to exhaust his available administrative remedies prior to filing suit, and Defendant Dollar is entitled to the grant of summary judgment on this ground.

### B. Qualified Immunity

Although it is not necessary to the adjudication of this case, the Court otherwise notes Defendants claim that they are entitled to summary judgment based on the doctrine of qualified immunity. Qualified immunity protects governmental employees from individual, civil liability as long as their conduct does not violate clearly established "constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An evaluation of qualified immunity requires the Court to conduct a three-pronged inquiry: (1) whether there was a constitutional violation; (2) whether the violated right was "clearly-

8

established;" and (3) whether the official's actions were objectively unreasonable. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999).

For a right to be clearly-established, "at the time of the officer's conduct, the law [must have been] sufficiently clear such that 'every reasonable official would understand what he is doing is unlawful.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Once qualified immunity has been pleaded by a defendant, the plaintiff bears the burden of rebutting the defense by showing both "that the challenged conduct violated a constitutional or statutory right, and that the right was so clearly established at the time of the conduct 'that every reasonable official would have understood that what he [was] doing violate[d] that right.' *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014) (citing *Ashcroft*, 563 U.S. at 741). In short, it is a defense that protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Plaintiff's claim of excessive force implicates the Eighth Amendment's prohibition against cruel and unusual punishment. *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002). In determining whether a prison official has violated the Eighth Amendment's prohibition against excessive force, courts apply a two-part inquiry that is made up of subjective and objective components: (1) "whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm," i.e. the subjective component; and (2) whether the conduct, in context, is sufficiently serious to offend "contemporary standards of decency," i.e., the objective component. *Hudson v. McMillan*, 503 U.S. 1, 6, 9 (1992).

The subjective prong requires consideration of the need for the use of force, the relationship between that need and the force used, the threat reasonably perceived by the official, and the extent

9

of the injury. *Hudson*, 503 U.S. at 7. To satisfy the objective component, an inmate need not prove a serious injury to prove cruel and unusual treatment, but the extent of the injury may be probative of whether the force was plausibly "thought necessary" in the situation. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). However, "not every malevolent touch by a prison guard" creates a federal claim, and *de minimis* uses of physical force that are not repugnant to the conscience of mankind do not violate the Eighth Amendment. *Id.* (quoting *Hudson*, 503 U.S. at 9). In fact, the good faith use of physical force in pursuit of a valid penological objective will rarely, if ever, violate the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).

Defendants argue that their uses of force were wholly legitimate and the least forceful necessary under the circumstances; Plaintiff disagrees. The dismissal letters submitted by Plaintiff are not sufficient to establish that Defendants bear any constitutional liability as a matter of law. The Court finds that they are sufficient, however, to create a question of whether Defendants reacted with a response disproportionate to the need for any force in subduing Plaintiff, or in placing him half-naked in an outdoor recreation cage in sub-freezing weather. Accordingly, while Defendants' qualified immunity argument is mooted by the Court's exhaustion ruling, the Court nonetheless notes that it would deny Defendants' motions for summary judgment on the basis of qualified immunity.

## V.     CONCLUSION

For the foregoing reasons, Defendant T. Dollar's motion for summary judgment on the basis of want of exhaustion [Doc. 119] is **GRANTED**. All remaining motions [Docs. 124, 129, and 134] are **DISMISSED AS MOOT**.

So ordered.

ENTER:

_____
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE